# THE MARKS LAW FIRM, P.C.

**December 20, 2021**

VIA ECF FILING
The Honorable Pamela K. Chen
United States District Judge z

Re: <u>*Duncan v. Gabriel Bros, Inc.*</u>, Case No. 1:21-cv-5368 (PKC)

Dear Judge Chen,

    The undersigned represents the Plaintiffs in the above-referenced matter regarding Defendant's on-going discrimination against people with disabilities in violation of Title III of the ADA, and therefore under analogous State and City Human Rights laws as well. We oppose Defendant's position in the anticipated motion to dismiss.

    Defendant's tactic of "a good defense is a strong offense" by threatening a motion to dismiss completely lacks merit and is misleading. Defendant is simply seeking to apply inapplicable case law to fit their hopeful defense whereby Defendant falsely holds itself out as a website only business without a physical location. Defendant also claims are moot because the website is now compliant, yet failed to provide a scintilla of support, because none exist.

### **Defendant Operates A Physical Location In New York**

    Defendant improperly relies upon *Winegard v. Newsday LLC*, No. 19-CV-04420(EK)(RER), 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021), a recent decision in the EDNY discussing the applicability of the ADA to a <u>website only</u> business (although there is ample case law to the contrary as acknowledged in Defendants pre-motion letter). Defendant misleads this court to believe it operates a website only business, but in fact they are not – meaning *Winegard* does not apply here. Specifically, **Defendants operate a physical retail location at 545 West 45th St, 3rd Floor, New York, NY 10036**. Defendants website continues to at all relevant times invite customers to make appoints (through the website) to go to their "Gabriel studio" located at their showroom, to try on jewelry, discuss optimized option and to purchase the same. Attached hereto are screenshots from the Defendants website. It is well settled that the ADA applies to websites operated in conjunction with a physical location.

### **The Plaintiff has Suffered an Injury-In-Fact and Therefore Has Standing**

    Defendants argument is a red-herring. The U.S. Const. Art. III "requirement that Plaintiffs adequately allege an *injury in fact* "serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem.*** "[A]n identifiable trifle is enough for standing to fight out a question of principle". Because this letter arises at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss courts presume that general

54 West 40th St, Suite 1131, New York, New York 10018
T: (646) 770 – 3775, F: (646) 867 – 2639, brad@markslawpc.com
www.markslawpc.com

allegations embrace those specific facts that are necessary to support the claim (citations omitted)". *Citizens for Responsibility & Ethics in Wash. v. Trump*, 939 F.3d 131, 137 (2d Cir. 2019).

Plaintiff has standing to bring this lawsuit because he has suffered a concrete harm that is particularized to him – being personally subjected to discriminatory treatment. "To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Kreisler v. Second Ave. Diner Corp.,* 731 F.3d 184, 187 (2d Cir. 2013); *see also, Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Where, as here, a plaintiff seeks injunctive relief, he also must demonstrate "that the identified injury in fact presents a real and immediate threat of repeated injury." *Kreisler,* 731 F.3d at 187 (citation and internal quotation marks omitted).

Applying these requirements in the ADA context, courts have found "standing (and therefore an injury in fact) where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [business] to plaintiff's home, that plaintiff intended to return to the subject location." *All of which have been plead in the Complaint*.

The courts have also held that "in reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act." *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *9 (S.D.N.Y. Dec. 4, 2019).

## **Plaintiffs Claims are not Moot**

Defendant alleges the claims are moot, yet provide no support whatsoever. Defendant's self-serving claims about the Website being remediated – so that it can achieve an early dismissal of this action – is simply incorrect and not credible.

In *Romero v. Adagio Teas, Inc.*, and the progeny of cases, the claim of compliance did not moot the case because it not possible to determine as a matter of law, at this stage in the litigation, that (1) the accessibility barriers on Defendant's Website have been removed, and that (2) there is no chance of those accessibility issues reoccurring. Here, there is clearly a factual dispute as to whether defendant's website contains the barriers, which is opposite sides of the factual question. Defendant's defense, therefore, is properly tested in discovery and at summary judgment or trial, not at this early stage of the action. Indeed, the competing affidavits reinforce the conclusion that discovery is necessary to determine defendant's compliance with the ADA or lack thereof.

54 West 40th St, Suite 1131, New York, New York 10018
T: (646) 770 – 3775, F: (646) 867 – 2639, brad@markslawpc.com
www.markslawpc.com

Even if any of this evidence could be considered on a Rule 12 motion, Defendant still cannot possibly have met its burden of establishing that the Plaintiff's claim is moot. The "voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). This is because "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016). "Courts look at voluntary cessation of challenged conduct particularly skeptically where it appears to track the development of the litigation." *Nat. Res. Def. Council v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 138 (S.D.N.Y. 2019). *See also, Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.,* 906 F.3d 215, 224 (2d Cir. 2018)(" We also note that mootness doctrine counsels suspicion in situations in which a defendant deprives a plaintiff of her stake in the litigation").

The Second Circuit applies a two-part test to determine whether a defendant's voluntary cessation has rendered a case moot. The defendant must demonstrate that: "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996). *See also, Fed. Defs. of N.Y. v. Fed. Bureau of Prisons,* 954 F.3d 118, 126 (2d Cir. 2020)("Defendants, however, cannot automatically moot this case simply by ending their unlawful conduct once sued. Instead, they must show that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur"). "This is both a stringent and a formidable burden." *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (internal citations omitted).

Given that there is a clear dispute as to whether the issues raised in the Complaint still persist, clearly there can be no finding as a matter of law that the Defendant has "completely and irrevocably eradicated the effects of the alleged violation". *See e.g., Diaz v. Lobel's of New York, LLC,* 2019 WL 3429774, at *6 (E.D.N.Y. July 30, 2019)(rejecting mootness challenge and finding that "The court cannot conclude, based on the evidence before it, that Defendant has fully rectified all access barriers in the Website or that it is absolutely clear the Defendant cannot resume the allegedly offending conduct.

Accordingly, The Plaintiff claims under Title III and therefore under analogous State and City Human Rights laws as well, to which the same arguments apply. Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss.

Respectfully submitted,

*/s/Bradly Marks*

Bradly Marks

54 West 40th St, Suite 1131, New York, New York 10018
T: (646) 770 – 3775, F: (646) 867 – 2639, brad@markslawpc.com
www.markslawpc.com

Free Silver Necklace with $500 Gabriel & Co Purchase - In Store or Online (While

Store Locator | Wishlist | Retailer Login

GABRIEL & CO.  

Try Our Beta Test Site
Engagement    Wedding    Fine Jewelry    Men's    Gifts    About

# Contact Us

## Leave a Message

**Call Us**
(212)-519-1400

**Visit Us**
545 W 45th St 3rd floor
New York, NY
10036 USA

**Hours**
Mon – Fri: 9 AM – 6 PM ET

By appointment-only for a Gabriel studio visit in our New York corporate office.

Name

Email

ZIP Code

Phone: (optional)

Message

protected by reCAPTCHA
Privacy - Terms

Send

## FAQ

**CAN I CANCEL MY ORDER?**

# TRY ANY ENGAGEMENT RING AT A STORE NEAR YOU

Browse online, shop in store. Gabriel & Co. offers you to view, wear, and experience any ring in a store near you.



### Select "View In Store"

Browse our engagement ring collections. When you see the perfect ring, click "View In Store" and fill out the form.



### Schedule Appointment

Our dedicated Concierge service team will contact you within 24 hours to arrange your preview at the nearest partner store.



### Visit Store

Visit the Gabriel & Co. partner store to try on your rings, discuss customized options and to purchase. No commitments.